**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| AMSELFILM PRODUCTIONS | : | |
| GMBH & CO. KG, | : | Civil Action No. 2:12-CV-03865 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SWARM 6A6DC, | : | |
| JOHN DOES 1-187, | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF: MOTION TO QUASH PLAINTIFF'S RULE 45
SUBPOENA AND MOTION TO SEVER & DISMISS DEFENDANT JOHN
DOE #72 PURSUANT TO RULE 21
<u>BY DEFENDANT JOHN DOE #72</u>**

# **TABLE OF CONTENTS**

INTRODUCTION.....................................................................................1

RELEVANT FACTUAL BACKGROUND…..........................................1

ARGUMENT WITH RESPECT TO THE MOTION TO QUASH .........................7

    A.    DEFENDANT, JOHN DOE #72, HAS STANDING
    TO CONTEST THE SUBPOENA ...............................................................7

    B.    THE SUBPOENA SHOULD BE QUASHED BECAUSE THE
    REQUESTED DISCOVERY INFORMATION DOES NOT ADVANCE
    PLAINTIFF'S CASE AND WOULD IMPOSE ANNOYANCE,
    EMBARASSMENT, AND UNDUE BURDEN...........................................8

ARGUMENT WITH RESPECT TO THE MOTION TO SEVER…………......12

    A.    INTRODUCTION...............................................................12

    B.    PLAINTIFF CANNOT MEET RULE 20'S
    TRANSACTIONAL COMPONENT………………………………...14

    C.    JOINDER IS DISCRETIONARY WITH THE COURT
    TO ENSURE JUSTICE………………………………………….....15

    D.    PLAINTIFF MANIPULATES JOINDER TO AVOID
    PAYING FILING FEES………………………………………….....16

    E.    THE COURT LACKS PERSONAL JURISDICTION OVER JOHN
    DOE 72…………………………………………………………17

    F.    THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEW
    JERSEY IS AN IMPROPER VENUE FOR THIS ACTION……………...22

CONCLUSION ...................................................................................23

# TABLE OF AUTHORITIES

**Cases**

Pac. Century Int'l Ltd. v. Does 1-37, 2012 U.S. Dist. LEXIS
        44368 [*3] (N.D.Ill. Mar. 30, 2012)………………….…………..…………5, 19

Malibu Media, LLC v. John Does 1-10, 2012 U.S. Dist. LEXIS 89286 (C.D. Cal.
        June 27, 2012)…………………………….……………….....................6-7

Hard Drive Prods., Inc. v. Does 1-90, 2012 WL 1094653 (N.D. Cal. Mar. 30,
        2012)………..……………………………………………….…………7

Third Degree Films, Inc. v. Does 1-108, 2012 U.S. Dist. LEXIS 25400
        (D. Md. Feb. 28, 2012).................................................................................7

Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 820 (5th Cir. 2004)...............8

Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 580
        (N.D.Cal. 1999)………………………………..…………………………....9

In re BitTorrent Adult Film Copyright Infringement Cases,
        2012 U.S. Dist. LEXIS 61447 [*8] (E.D.N.Y. May 1, 2012)…………....9, 14

VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS
        64656 (C.D.Ill. Apr. 29, 2011)…………………….………...………….…….10

Patrick Collins, Inc. v. Does 1-54, 2012 WL 911432 (D. Ariz. 2012)…………....14

Raw Films, Ltd. v. Does 1-32, 2011 U.S. Dist. LEXIS 149215,
        2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011)………………..........14-15

Raw Films, Ltd. v. Does 1-32, 2011 U.S. Dist. LEXIS 114996,
        2011 WL 6182025, at *2 (E.D.Va. 2011)…………..………...…………..15

Pac. Century Int'l Ltd. v. Does 1-101, 2011 U.S. Dist. LEXIS
        124518 (N.D.Cal. Oct. 27, 2011)………………….………………15-16

In re Diet Drugs, 325 F. Supp. 2d 540, 541-42 (E.D.Pa. 2004) …………...............17

Pac. Century Int'l Ltd. v. Does 1-37, 2012 U.S. Dist. LEXIS
44368 (N.D.Ill. Mar. 30, 2012)……………………………………………….17

Gen. Elec. Co. v. Deutz AG, 270 F.3d 144 (3rd Cir. 2001)………………………17

Am. Bus. Lending Group, Inc. v. Shainis, 2011 U.S. Dist. LEXIS 15179 (D.N.J.
Feb 14, 2011)………………………….…………………………………….18-20

Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28  (3rd Cir. 1993)……...18

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)…………………..18-19, 21

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)…...18-19

Marten v. Godwin, 499 F.3d 290 (3rd Cir. Pa. 2007)…………………...…19, 21-22

Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984)……………………….....19

Int'l Shoe Company v. Washington, 326 U.S. 310 (1945)………………………..19

United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F.Supp. 371
(1988)……………………………………………………………………...…19

World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 296 (1980)………..……..20

Berlin Media Art v. Does 1-654, 2011 U.S. Dist. LEXIS 120257 (N.D. Cal. Oct.
18, 2011)……………………………………………………………………....20-21

On The Cheap, LLC v. Does 1-5011, 2011 U.S. Dist. LEXIS 99831, 2011 WL
4018258 (N.D. Cal. Sep 6, 2011)……………………………………………21

**Federal Rules**

Fed. R. Civ. P. 45(c)(3)(A)(iv)...............................................................................8

Fed. R. Civ. P. 26.....................................................................................................8

Fed. R. Civ. P. 26(b)(1)............................................................................................8

Fed. R. Civ. P. 26(c)………...................................................................................8

Fed. R. Civ. P. 20(a)(2)........................................................................12

Fed. R. Civ. P. 20(b)...........................................................................13

Fed. R. Civ. P. 21.........................................................................13, 17

Fed. R. Civ. P. 1................................................................................17

Fed. R. Civ. P. 4(e)…………………………………………………………..17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AMSELFILM PRODUCTIONS    :
GMBH & CO. KG,              :     Civil Action No. 2:12-CV-03865
             Plaintiff,  :
                       :
v.                        :
                       :
SWARM 6A6DC,           :
JOHN DOES 1-187,        :
           Defendants. :

## BRIEF IN SUPPORT OF: MOTION TO QUASH PLAINTIFF'S RULE 45 SUBPOENA AND MOTION TO SEVER & DISMISS DEFENDANT JOHN DOE #72 PURSUANT TO RULE 21
## <u>BY DEFENDANT JOHN DOE #72</u>

       John Doe #72 ("Defendant") (named as having IP address 67.164.190.69), by and through his counselor Michael Mignogna for the firm Mattleman, Weinroth & Miller, P.C., hereby moves to quash the subpoena or, in the alternative, moves to have the Court sever and dismiss him from the other John Doe Defendants in the instant case. Defendant cites the following in support:

## I.    FACTUAL BACKGROUND

       Amselsfilm Productions GmbH & Co. KG, ("Plaintiff") is a company based in Germany. Plaintiff alleges that he created the copyright item at issue in the instant litigation, the soundtrack to "Bablo," a Russian language film.

       Defendant John Doe #72 is a citizen of Colorado who wishes to remain anonymous. Defendant's Internet Service Provider ("ISP") at the time of the

1

alleged incident was Comcast. According to the ISP's records from the time of the alleged incident, Defendant's IP ("Internet Protocol") address was 67.164.190.69. That IP address, along with numerous others, has been named as involved in the swarm of file-sharing which forms the basis for this lawsuit.

Plaintiff alleges that John Does #1-187 infringed upon the copyright to the soundtrack. Plaintiff alleges the Does participated in a file-sharing "swarm" using BitTorrent from December 2011 to March 2012. (Plaintiff's Exhibit B). A "swarm," sometimes called a multisource or segmented downloading method, is a means by which users of BitTorrent can simultaneously download and share the same file without need of a single host.

The BitTorrent protocol allows users to transfer files over the Internet. Like virtually any file-sharing technology, BitTorrent may be used legally to upload or download computer files. It may also be used to pirate copyrighted software, music, movies, and other computer-accessible media. Unlike other file-sharing technologies, in which users connect to one another or to a central repository to transfer files, files shared via BitTorrent exist in a swarm, with pieces of the whole file distributed among the users.

The following example illustrates this technology in action: (1) the original user posts a 100 MB movie file on a BitTorrent tracker website. The file exists only on that original user's computer—the file is not uploaded to the tracker

website, (2) other users discover this movie file through the tracker website and log onto the BitTorrent swarm to download the file, (3) on the original user's computer, BitTorrent software divides the 100 MB movie into 10,000 pieces, each representing a 10 kB "packet" or piece, (4) as other downloaders log onto the BitTorrent swarm, these 10 kB pieces are randomly distributed—the first piece to the first downloader, the second piece to the second downloader, etc., (5) after the initial packets are transferred, additional packets are randomly transferred to the downloaders so that the first downloader may have the first and 500th piece, the second the second and 900th to the second, etc., (6) once enough packets have been distributed to downloaders in the swarm, the BitTorrent protocol will automatically transfer pieces between downloaders so that the first downloader may receive the 900th piece from the second downloader and the second downloader may receive the first piece from the first downloader, etc., (7) the BitTorrent swarm becomes larger as more people—from around the world—log in and more pieces are distributed, (8) once every piece of the original file has been uploaded to the collective swarm, the original downloader may log off—the entire movie exists in packets among the swarm, (9) when a downloader has received all of the 10 kB packets of the 100 MB file, his BitTorrent software restructures the data so as to reconstruct a copy of the original file on his computer, finally (10) these completed

downloaders may now log off, or they may remain online to continue seeding pieces of the file to other downloaders.

There are several nuances about the BitTorrent protocol that warrant further explanation. First, every participant may upload and download pieces of the file essentially simultaneously. Second, these individual pieces are useless until a user has all of them. The user cannot reassemble the original file with even 99% of the pieces. Third, a user may log on and download just one piece (e.g. a 10 kB piece) of the file and log off, waiting to download other pieces later or discarding the downloaded pieces entirely. Fourth, a BitTorrent user may restrict his software settings so as to only permit downloads and not uploads.

Plaintiff's suit is but one among a blizzard of mass copyright infringement suits that have recently swept through federal courts around the nation. These copyright infringement lawsuits have largely focused on the BitTorrent family of protocols. On July 18, 2012, Plaintiff was granted leave to take expedited discovery pursuant to a Rule 26(f) conference and issuance of a Rule 45 subpoena. The Plaintiff will then seek to link the IP addresses to the names and mailing addresses of Internet subscribers.

Upon information and belief, Defendant asserts that none of these cases have been brought to trial. In the rare instance in which a John Doe raises a defense or counter-claims, the plaintiffs abandon any attempt to pursue that case. Instead, the

plaintiffs' strategy has been (a) to collect personal identifying information concerning the various John Doe defendants via early discovery, and then (b) to send a threatening letter to each defendant alleging copyright infringement while demanding a settlement payment to dismiss the claims. The settlement payments are usually in the thousands of dollars per defendant. Chief among the coercive elements of the plaintiffs' strategy is the insinuation of public disclosure. The plaintiffs warn, barring receipt of a substantial settlement, that the defendant's name will appear alongside the allegations of copyright infringement of a film or films, the titles of which are usually obnoxious and pornographic. *See, e.g., Pac. Century Int'l, Ltd. v. Does 1-37,* 2012 U.S. Dist. LEXIS 44368 (N.D. Ill. Mar. 30, 2012).

Plaintiff lacks the desire to prove his case on the merits; rather, he engages in a fishing expedition to hassle, embarrass and extract payment from Doe Defendants. As noted above, individual file packets are useless. Without the remaining pieces, a single Doe Defendant cannot do anything with this scrap of data. If it is the case that each Doe Defendant actually logged into a BitTorrent swarm, a questionable premise as explained *infra*, downloaded without the complete file and then logged off, all he has done is receive an unusable fragment of a copyrighted work.

An IP address issued to an Internet subscriber is not necessarily linked to just one computer. In fact, by means of a fairly common, inexpensive wireless router, an Internet subscriber's IP address can be accessed by numerous people. Without the Internet subscriber's knowledge or consent, someone else may have joined into a file-sharing swarm. This may be true even if the Internet subscriber had attempted to secure his wireless connection with a password. Given the inevitability of wireless Internet sharing and insecurity, the plaintiffs in these types of lawsuits may well have only the slightest speculation that any of the named defendants actually infringed on the plaintiffs' copyright. Worse, the plaintiffs conceal their true objective—scaring the defendants into paying thousands of dollars in settlement—within litigation documents riddled with attenuated legal theories concerning joinder, discovery, and more.

A similar plaintiff, Malibu Media, was recently the subject of a searing decision by the District Court for the Central District of California:

> The court is familiar with lawsuits like this one. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits. *The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial.* By requiring Malibu to file

6

separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do so the old-fashioned way and earn it.

*Malibu Media, LLC v. John Does 1-10,* 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012)(emphasis supplied); *see also Hard Drive Prods., Inc. v. Does 1-90,* 2012 WL 1094653 at *7 (N.D. Cal. Mar. 30, 2012)(stating that "the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net).").

## II.   ARGUMENT WITH RESPECT TO THE MOTION TO QUASH

### A.   DEFENDANT, JOHN DOE #72, HAS STANDING TO CONTEST THE SUBPOENA

The threshold issue in a Motion to Quash is that of standing. Plaintiff seeks disclosure of Defendant's confidential, personal identity information. This information is shared only between the Defendant, as an Internet subscriber, and his ISP. Indeed, as the nature of Plaintiff's Complaint itself demonstrates, a subscriber's IP address is anonymous except for the fact that it discloses his general location and ISP. Consequently, the Defendant has privacy and proprietary interests over the information sought after in this subpoena; he may, therefore, move to quash the subpoena. *See, e.g., Third Degree Films, Inc. v. Does 1-108,* 2012 U.S. Dist. LEXIS 25400 (D. Md. Feb. 28, 2012). In the alternative, Defendant has standing to move to quash the subpoena to prevent an undue burden

under Fed. R. Civ. P. 45(c)(3)(A)(iv) or because the subpoena would subject him

to annoyance or embarrassment as outlined in Fed. R. Civ. P. 26.


     B.     THE SUBPOENA SHOULD BE QUASHED BECAUSE THE
REQUESTED DISCOVERY INFORMATION DOES NOT ADVANCE
PLAINTIFF'S CASE AND WOULD IMPOSE ANNOYANCE,
EMBARASSEMENT, AND AN UNDUE BURDEN

     Plaintiff, through his subpoena, seeks information that is neither relevant to

pursuing his claim nor which takes effort to relieve the Doe Defendants of

unnecessary annoyance or embarrassment. Generally, the scope of discovery is

broad and permits the discovery of "any nonprivileged matter that is relevant to

any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A discovery request is

relevant when the request seeks admissible evidence or "is reasonably calculated to

lead to the discovery of admissible evidence." *Wiwa v. Royal Dutch Petroleum*

*Co.,* 392 F.3d 812, 820 (5th Cir. 2004)(citation and internal marks omitted).

Federal Rule 45(c)(3)(A)(iv) authorizes the court to quash a subpoena to protect a

person from "undue burden." Additionally, Rule 26(c) permits a court to make

"any order which justice requires to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

     In order to be eligible for early discovery, Plaintiff must demonstrate a

reasonable likelihood that the requested discovery will lead to identification of the

Doe Defendant. *See Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 580

(N.D. Cal. 1999). But, given the nature of file-sharing technology, an IP address is not necessarily correlated with the individual targeted in an allegation of copyright infringement. This is because an IP address is issued to an Internet *subscriber*—not to any particular computer or individual. In fact, the District Court for the Eastern District of New York recently stated: "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time." *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447 [*8] (E.D.N.Y. May 1, 2012).

Briefly, when an ISP issues an Internet subscription, the subscriber is issued an IP address. The subscriber can use a wireless router to transmit Internet access, using the same IP address, to any computer within several hundred feet of the router. With modern, powerful wireless routers, the connection distance can be quite large. Wireless routers are becoming increasingly common throughout the nation. Some estimate that wireless routers are used by nearly 61% of all U.S. homes. Lardinois, F,. "Study: 61% of US Households Now Have WiFi," available at http://techcrunch.com, 4/5/12.

Plaintiff makes the bald assertion in his Complaint that "Amselfilm can conclusively established [sic] the offering for distribution and distribution of a pirate copy by each of the Defendants." (Plaintiff's Memorandum of Law in

9

Support of Application for a Preliminary Injunction and Related Relief, page 12).

What Plaintiff neglects to consider is that the subscribers to whom IP addresses

were issued, even if their wireless routers were password secured, may not actually

be the same person who allegedly shared the file at issue in the instant litigation. In

similar litigation, the District Court for the Central District of Illinois pointed out

that:

> IP subscribers are not necessarily copyright infringers. Carolyn Thompson
> writes in an MSNBC article of a raid by federal agents on a home that was
> linked to downloaded child pornography. The identity and location of the
> subscriber were provided by the ISP. The desktop computer, iPhones, and
> iPads of the homeowner and his wife were seized in the raid. Federal agents
> returned the equipment after determining that no one at the home had
> downloaded the illegal material. Agents eventually traced the downloads to a
> neighbor who had used multiple IP subscribers' Wi-Fi connections
> (including a secure connection from the State University of New York).

*VPR Internationale v. Does 1-1017*, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr.
29, 2011)(citing Thompson, C., "Bizarre Pornography Raid Underscores Wi-Fi
Privacy Risks," available at
http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless,
4/25/11.

The Court then went on to explain that "[w]here an IP address might actually

identify an individual subscriber . . . the infringer might be the subscriber, someone

in the subscriber's household, a visitor with her laptop, a neighbor, *or someone*

*parked on the street at any given moment*." *VPR Internationale v. Does 1-1017*,

2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011)(emphasis supplied).

An additional problem is presented by IP spoofing. The most basic tool by which information is transferred online is the IP. An IP contains a numerical source and destination code from which an "IP address" can be gleaned. The source address is normally that from which an information packet was sent. By forging headers in information packets, however, an Internet user can conceal his true location behind the forged IP address of another. This forging process is relatively simple and is commonly referred to as "spoofing." In the instant litigation, the actual copyright infringer could have mimicked the IP address of a named John Doe. The legitimate holder of an IP address, meanwhile, would have no way of knowing that somebody else was masquerading online with his IP address. Plaintiff presents no proof that his named IP addresses are legitimate and not the product of spoofing technology. Plaintiff seems to have recklessly run the risk that its named IP addresses are not even the correct IP addresses from which he as attempting to collect identifying information.

Defendant John Doe #72 incorporates a Declaration to this Brief clarifying that his urban home has a wireless ("WiFi") Internet router (Declaration of John Doe of IP Address 67.164.190.69). Doe #72 also attests that his WiFi router was on at the date and time alleged. Neighbors, their social guests and people nearby his home could have been within range of Doe #72's WiFi signal. In other words,

the Motion to Quash should be granted because not only is the correct party not

named, he is not likely ever to be found.


## III.    ARGUMENT WITH RESPECT TO THE MOTION TO SEVER

A.    INTRODUCTION

The Federal Rules set forth the requirements for permissive joinder:

"Persons . . . may be joined in one action as defendants if: (A) any right to relief

[is] asserted against them jointly, severally, or in the alternative with respect to or

arising out of the same transaction or occurrence or series of transactions or

occurrences; and (B) any question of law or fact common to all defendants will

arise in the action." Fed R. Civ. P. 20(a)(2). The Federal Rules also provide that

"[t]he court may issue orders—including an order for separate trials—to protect a

party against embarrassment, delay, expense, or other prejudice that arises from

including a person against whom the party asserts no claim and who asserts no

claim against the party." Fed R. Civ. P. 20(b). Additionally, the Court, on its own

or by motion, may drop a party as provided by Federal Rule 21.

Plaintiff's contention is that individuals joining anonymously into a swarm,

enduring over the course of several months, were somehow coordinated in their

activity. He then argues that each individual was involved in the same

"transaction," "occurrence," or "series of transactions or occurrences." In the

instant situation, the connection into the swarm at issue, if it happened at all, would have taken place without the knowledge or consent of the Internet subscriber actually targeted in the lawsuit.

When a BitTorrent user begins using the software, he has no idea who the other members of the swarm may be. They may be from Swedesboro, New Jersey or they may be from Sweden. The only information available to the BitTorrent user is how many other users are connected into the swarm. Because there may be potentially thousands of individuals in the swarm, it is possible none of the named Doe Defendants in this action ever participated in the swarm at the same time with one another—even inadvertently.

## B.    PLAINTIFF CANNOT MEET RULE 20'S TRANSACTIONAL COMPONENT

District Courts in similar matters have found misjoinder, usually on the deficiency in Rule 20's transactional component—holding that the Doe Defendants' separate and distinct circumstances would not constitute the same "transaction," "occurrence," or "series of transactions or occurrences." In perhaps the best explanation of why joinder is inappropriate in these cases, a judge in the District Court for the Eastern District of New York noted that, as a practical matter, it is unclear whether a Doe Defendant could have "act[ed] in concert" with others as part of some act to infringe on the plaintiff's copyright." *In re BitTorrent*

*Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012). As the Court remarked, "[m]uch of the BitTorrent protocol operates invisibly to the user—after downloading a file, subsequent uploading takes place automatically if the user fails to close the program." *Id.* In addition, the Court noted that it seemed less plausible to accept the notion that the Doe Defendants acted in concert with one another because the dates of alleged downloading in the complaints were sometimes weeks or months apart. *Id.*

A recent decision from the District of Arizona, concerning a similar Plaintiff at issue in this litigation, is particularly instructive on this point. In that case, the Court applied the Federal Rules on joinder as they pertained to just two Doe Defendants in a civil action. The Court determined that the joinder of even these two Does was improper:

> Plaintiff alleges that the two remaining Defendants 'participat[ed] in a BitTorrent swarm with other infringers' but does not claim that John Doe 6 provided data to the former John Doe 12, or vice versa. Plaintiff included as Defendants only those IP addresses from the swarm in question that were located in Arizona, demonstrating that the actions of the individual members of the swarm are easily distinguishable. Plaintiff alleges no facts that these two particular Defendants shared data with each other, and provides data instead that they were logged on to BitTorrent weeks apart.

*Patrick Collins, Inc. v. Does 1-54,* 2012 WL 911432 (D. Ariz. 2012).

Courts in other Districts have refused to find joinder proper when a single swarm was at issue. *See generally Raw Films, Ltd. v. Does 1-32,* 2011 U.S. Dist. LEXIS 149215, 2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011)(stating that the

"differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32*, 2011 U.S. Dist. LEXIS 114996, 2011 WL 6182025 at *2 (E.D.Va. 2011)(stating that conduct over a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20").

C.  JOINDER IS DISCRETIONARY WITH THE COURT TO ENSURE JUSTICE

Additionally, because joinder is discretionary with the Court, the Court would retain the ability to sever a defendant to comport with principles of justice and fairness. Fed R. Civ. P. 21. Federal Rule of Civil Procedure 1 advises that the Rules should be construed to provide "just, speedy, and inexpensive determination" of civil disputes. As one Court in the Northern District of California insisted, in severing Does 2-101 and dismissing their cases without prejudice for improper joinder:

> Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, *pro se* Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court . . . cannot permit a case to proceed in this manner.

*Pac. Century Int'l, Ltd. v. Does 1-101,* 2011 U.S. Dist. LEXIS 124518 (N.D. Cal. Oct. 27, 2011).

To avoid a similar unmanageable maelstrom of litigation, this Court is urged to consider severance.

D.    PLAINTIFF MANIPULATES JOINDER TO AVOID PAYING FILING FEES

Plaintiff deviously attempts to join together this large number of defendants under shaky pretenses in order to avoid paying appropriate filing fees. Generally, filing fees serve two purposes. First, they operate as a revenue raising measure to offset the cost to the judicial system for hearing cases. Second, they operate as a minimalistic barrier to bar the filing of utterly frivolous and meritless lawsuits. *See, e.g., In re Diet Drugs,* 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004).

Several courts in similar cases involving BitTorrent protocol have also recognized the effect of avoiding filing fees. One Court explained that "these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficacy is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers." *Pac. Century Int'l, Ltd. v. Does 1-37,* 2012 U.S. Dist. LEXIS 44368 [*3] (N.D. Ill. Mar. 30, 2012). In the instant litigation, Plaintiff avails himself of the judicial system in something akin to a reverse-class action

16

lawsuit. He avoids paying potentially thousands of dollars in filing fees by spinning the Federal Rules regarding permissive joinder to fit his peculiar set of facts.

### E.   THE COURT LACKS PERSONAL JURISDICTION OVER JOHN DOE #72

Plaintiff bears the burden of showing that personal jurisdiction exists. *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3rd Cir. 2001). Pursuant to Federal Rule of Civil Procedure 4(e), federal district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district sits. *Am. Bus. Lending Group, Inc. v. Shainis,* 2011 U.S. Dist. LEXIS 15179, at 9 (D.N.J. Feb 14, 2011)(*citing Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 31 (3rd Cir. 1993)). New Jersey's long-arm statute provides for personal jurisdiction as far as permitted under the 14th Amendment to the United States Constitution. *Am. Bus. Lending Group, Inc.,* 2011 U.S. Dist. LEXIS 15179, at 9, *see also* N.J. Ct. R. 4:4-4.

The 14th Amendment to the U.S. Constitution "permits a state to exercise personal jurisdiction over an out-of-state defendant only where the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the protections and benefits of its laws." *Am. Bus.*

17

*Lending Group, Inc.,* 2011 U.S. Dist. LEXIS 15179, at 9 (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, at 475 (1985)).

Two recognized types of personal jurisdiction exist. General jurisdiction exists for circumstances in which the defendant has maintained systematic and continuous contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15 & n.8 (1984). Specific jurisdiction exists for circumstances in which the claim arises from or relates to conduct purposely directed at the forum state. *Id.* at 414-15 & n.9. Neither form of jurisdiction exists in the instant litigation over John Doe #72.

As he indicates in his Declaration, John Doe #72 is a Colorado resident. He has no sustained or continuous contacts to New Jersey whatsoever. In addition, Doe #72 does not meet the Third Circuit's traditional three-part inquiry. *Marten v. Godwin,* 499 F.3d 290, 296 (3rd Cir. Pa. 2007). First, the defendant must have "'purposely directed' his activities" at the forum. *Burger King,* 471 U.S. at 472 (*quoting Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)). Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros,* 466 U.S. at 414. Third, the Court may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (*quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945).

18

Plaintiff brazenly asserts that "the Swarm . . . maintained a physical presence within this jurisdiction, operated within this jurisdiction, and is subject to the jurisdiction of this Court." (Plaintiff's Memorandum of Law in Support of Application for a Preliminary Injunction and Related Relief, page 9). To his credit, the Plaintiff concedes—in the very same paragraph—that "[t]he Swarm, *through the individual Doe Defendants*, maintained copies of the work on multiple servers in this State, and distributed the work from Internet accounts located within this State." *Id.* In a sense, the Plaintiff argues that the Swarm has a life of its own, independent from the Doe Defendants who allegedly joined into that Swarm. At the same time, however, Plaintiff surely must know from his own Exhibit B that the vast majority of Does are located outside of New Jersey. By admitting that the Swarm can only exist through the activities of its participants, Plaintiff is asking the Court to grant relief (the injunction) that it cannot possibly grant. Plaintiff is also asking the District Court of New Jersey to assert jurisdiction for no other reason than the Plaintiff's own convenience. Justice could hardly be served if the Court sides with the Plaintiff on this issue.

The District Court for the District of New Jersey has stated that there must be at least a single deliberate contact with the forum state that relates to the cause of action. *Am. Bus. Lending Group, Inc.,* 2011 U.S. Dist. LEXIS 15179 (*citing United States Golf Ass'n v. United States Amateur Golf Ass'n,* 690 F.Supp. 371,

320 (1988)). For jurisdiction to pass the fair play and substantial justice test, it must be reasonable for a defendant to defend the suit in the forum state judged by the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and efficient resolution of the controversy, the interstate judicial system's interest in the most efficient resolution, and the shared interest of the several states in furthering substantive social policies. *Am. Bus. Lending Group, Inc.,* 2011 U.S. Dist. LEXIS 15179 (*citing World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 296, 297 (1980)).

Any personal jurisdiction inquiry under the 14th Amendment requires a consideration of the contacts, if any, a defendant has to New Jersey with respect to the case at hand. In the instant litigation, John Doe #72 has not a single connection to New Jersey. John Doe #72 lives in Colorado. His Internet service comes via a subscription to his Colorado address.

In analyzing the same set of constitutional principles, the District Court in the Northern District of California previously rejected a plaintiff's argument that personal jurisdiction can be granted by virtue of a Doe Defendant's participation in a BitTorrent swarm. *Berlin Media Art v. Does 1 - 654,* 2011 U.S. Dist. LEXIS 120257 (N.D. Cal. Oct. 18, 2011). In that case, a plaintiff sued 654 defendants. The plaintiff's complaint alleged only that at least one of the 654 defendants resided in the Northern District of California. As that Court explained:

There is nothing in the complaint that makes a prima facie showing that this court in the Northern District of California has personal jurisdiction of the doe defendants named in this case. The Court is not aware of any caselaw that suggests that this Court has personal jurisdiction over all 654 Defendants simply because "at least one" of the defendants (unidentified) allegedly happened to download the file at some point during the time period in question from a computer located in this District. As one court in this District noted, the logical extension of such an unprecedented holding "would be that everybody who used . . . BitTorrent would subject themselves to jurisdiction in every state." *Berlin Media Art v. Does 1 - 654,* 2011 U.S. Dist. LEXIS 120257 (N.D. Cal. Oct. 18, 2011)(quoting *On The Cheap, LLC v. Does 1-5011,* 2011 U.S. Dist. LEXIS 99831, 2011 WL 4018258 at *4 (N.D. Cal. Sep 6, 2011)). "[T]his is a far cry from the requirement that 'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State,' which is the hallmark of specific jurisdiction."

*Berlin Media Art v. Does 1 - 654,* 2011 U.S. Dist. LEXIS 120257 (N.D. Cal. Oct. 18, 2011)(quoting *Burger King,* 471 U.S.at 475).

The Court is urged to hold that a nonresident defendant must not be haled into a jurisdiction solely as a result of random and attenuated contacts or of the unilateral activity of another party or third person. Even if a Doe Defendant joined into a BitTorrent swarm to share Plaintiff's file, he would still only connect to other swarm members on a purely random basis with no foreknowledge that any of them would be located in New Jersey. Indeed, as the Third Circuit explained in *Marten*, "[e]ven if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state." *Marten v. Godwin,* 499 F.3d at 297-98. Plaintiff's flimsy premise with respect to the constitutional hurdles presented in the instant litigation is to argue, in

21

essence, that a John Doe, merely by virtue of having an Internet connection, can anticipate being haled into the Courts of *any* state in the nation.


F.     THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IS AN IMPROPER VENUE FOR THIS ACTION

Closely related to the question of personal jurisdiction is whether this Court is the proper venue for this particular action. Pursuant to the Copyright Act, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). As set forth above, Plaintiff cannot allege that Defendant John Doe #72 can be found in this District. (Declaration of John Doe #72, setting forth that Defendant is a Massachusetts resident). Thus, venue is not proper under § 1400.

Moreover, in a federal question case, venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Nothing in the Plaintiff's Complaint, however, suggests that Plaintiff has a good faith basis for alleging that a substantial part of the events or omissions occurred in this District. To the contrary, the Complaint asserts that 187 of what are potentially millions of BitTorrent users from around the world logged into this particular swarm using IP addresses for the named Doe Defendants. With these facts, a "substantial part of the events" forming the basis of

22

this litigation can hardly be said to have occurred in this District. Thus, the

Complaint against Defendant John Doe #72 should be dismissed, as venue is

improper.


## IV. CONCLUSION

Defendant has standing as his privacy interests are at stake and the subpoena

would trigger an undue burden as well as cause Defendant annoyance and

embarrassment. Plaintiff's pursuit by means of a subpoena is not likely to uncover

the identity of the copyright infringing person. Given the realities of modern-day

Internet connections, an Internet subscriber is hardly certain to be the same person

who used that subscriber's IP address to allegedly engage in file-sharing of

Plaintiff's work.

In the alternative, the Doe Defendants will very likely raise various defenses

under unique factual circumstances. Joinder would be both confusing and unfair to

Doe Defendants. Plaintiff fails to meet Rule 20's transactional component for

joinder. Even if this Court disagrees, this Court is free to sever on other grounds,

especially to promote fundamental concepts of justice and fairness. Finally,

Plaintiff cannot carry his burden of establishing personal jurisdiction under

longstanding constitutional standards. In addition, venue is improper in this

District as John Doe #72 does not reside here and a potentially massive number of

unnamed defendants did not act, even accidentally, within this District.

Thus, the Court is urged to quash the subpoena directed to Defendant John

Doe #72 or, in the alternative, he should be severed from the remaining 186

Defendants and the Complaint against him Dismissed without Prejudice.


Respectfully submitted,


/s Michael Mignogna, Esq.
Michael Mignogna
Bar # 85050
Mattleman, Weinroth & Miller, P.C.
401 Route 70 (Marlton Pike) East, Suite 100
Cherry Hill, NJ 08034
Phone: 856.429.5507
E-mail: mmignogna@mwm-law.com

24